**GATEWAY APARTMENTS, INC., Plaintiff,**

v.

**The MAYOR AND TOWNSHIP COUNCIL OF the TOWNSHIP OF NUTLEY, Township of Nutley, and Rent Leveling Board of the Township of Nutley, Defendants.**

Civ. A. No. 84–2830.

United States District Court, D. New Jersey.

March 28, 1985.

Ribis, McCluskey, Ruane & Graham by George G. Frino, Short Hills, N.J., for plaintiff.

Anthony T. Drollas, Nutley, N.J., for Mayor and Tp. Council of Nutley and Nutley Tp.

Michael E. Cozine, Nutley, N.J., for Rent Leveling Bd. of Nutley.

## OPINION

SAROKIN, District Judge.

### INTRODUCTION

█ This matter involves a constitutional attack upon a municipal ordinance which requires landlords to share seventy-five percent of tax rebates with their tenants. The ordinance is predicated upon certain obvious realities in the world of residential landlord and tenant relations. Rents are based upon expenses, and real estate taxes make up a substantial portion of those expenses. In establishing rents and in seeking increases in rent-controlled communities, taxes are frequently relied upon in reaching that determination.

Simply stated, it is not illogical or irrational for a municipality desirous of protecting tenants' rights and maintaining reasonable rents, to require that landlords who receive tax rebates should share them with those who have contributed to their payment. The subject ordinance does just that, although in an imperfect manner. The persons who have paid are not necessarily the persons whom receive the rebate; nor are the rebates shared in the same proportion among tenants as they have been paid.

These imperfections, however, do not render the ordinance unconstitutional. What underlies it is a legitimate function of municipal power exercised in a proper manner to protect the rights of tenants. Landlords might properly argue that tenants should not be able to participate in the profits of the venture when they assume no risk as to its investment. However, to rule otherwise in this instance, would be to declare that a municipality may not require the parties who have incurred an expense to share in its reimbursement. This would result in a windfall to landlords and deny to tenants the right to participate in a refund which they in large measure created.

█ We have long ago recognized the need to protect tenants particularly in those communities in which housing is extremely limited. We have made landlords unwilling partners with tenants, recognizing that housing needs must be balanced with the landlord's right to make a reasonable profit. Requiring landlords to share tax refunds with the tenants who, in effect, have paid those taxes is not an unconstitutional exercise of power by the municipality and indeed, represents a rational and common sense method of distributing such refunds.

### BACKGROUND

Plaintiff Gateway Apartments, Inc. brings this action challenging on several constitutional grounds, a Nutley Township ordinance which, as of the time of the filing of the Complaint, provided that whenever a landlord succeeds on a tax appeal, the benefits thereof were to be utilized to reduce the rents of the tenants to whom such landlord leased living space. Complaint, First Count ¶ 3 and Exh. B. Since that time, and indeed, since the original return date of the motion now before this court, such ordinance has been amended to reduce this so-called "pass through" to tenants from 100 percent of the tax rebate to 75 percent of such rebate. Defendant's Brief at 1. Nonetheless, plaintiff continues to press the instant motion for summary judgment on all counts of the Complaint.

Plaintiff Gateway Apartments, Inc. owns a multi-family residential dwelling in Nutley Township ("the Township"), the defendant herein. As such it is subject to defendant's rent control ordinance ("the ordinance") which regulates rent increases within the Township. *See* Complaint, Exh. A, § 180–2(A). The ordinance provides for annual rent increases of between five percent and six percent, depending upon whether a tenant does or does not pay for his own heat. § 180–2(C). There are, however, three exceptions to this rule. First, a landlord may obtain from the Rent Leveling Board a "hardship rental increase" of up to fifteen percent if he is not realizing a ten percent return on the fair market value of his property after taking into account income and expenses. § 180–5(A). Under the applicable formula, expenses include

taxes. Such hardship rental increases are not available to any landlords as to whom there is pending "any violation of State or municipal dwelling, code enforcement, health or fire statutes, ordinances or regulations." § 180–5(A)(3). Second, a landlord may receive a rent surcharge, based upon a formula, for "any major capital improvement to or any substantial increase in the services rendered to the tenants in any multiple dwelling." § 180–5(B). Such surcharge, which may be granted upon application to the Rent Leveling Board, may not exceed fifteen percent of the annual rent. *Ibid.* Finally, defendant has a system of vacancy decontrol. That is, "[i]n the event that occupancy of a dwelling unit shall be terminated solely through voluntary, uncoerced action of the tenant or by a judgment of the Essex County District Court, the landlord may increase the basic rent without regard to the limitations imposed by this chapter ...," provided that certain reporting requirements are met. § 180–6(A). Similarly, the initial rent set by a landlord is not regulated by the ordinance. § 180–10.

Plaintiff here challenges section 180–10.1 of the ordinance. That section states, in pertinent part,

In the event that a landlord perfects a successful tax appeal, the tenant shall receive seventy-five percent (75%) of all reductions as applied pro rata to the tenant's living space so leased, after deducting all reasonable expenses incurred by the landlord in perfecting the tax appeal.

After instituting an action for reduction of its 1982 and 1983 local property taxes in the Tax Court of New Jersey, on March 14, 1984, plaintiff entered into a settlement with the Township, pursuant to which a tax refund of over $70,000 was to be paid to plaintiff. *See* Complaint, First Count ¶ 4 and Exh. C; Plaintiff's Brief at 6; Defendant's Brief at 1. Defendant, through its Rent Leveling Board, demanded compliance with the aforesaid ordinance and, on July 17, 1984, plaintiff brought this action. It challenges the ordinance on several grounds: first, it alleges that the ordinance is unconstitutional in that it punishes, and

thereby restricts, the legitimate utilization of the courts, in contravention of the due process and equal protection clauses of the fourteenth amendment. Complaint, Counts I and IV; Plaintiff's Brief at 9–15. Second, it contends that the ordinance effects a taking of its private property without just compensation, in contravention of the takings clause of the fifth amendment. Complaint, Count II; Plaintiff's Brief at 16–20. And third, it alleges that the ordinance violates the contract clause of the United States Constitution. Complaint, Count III; Plaintiff's Brief at 21–25. Defendant has answered, admitting the facts pertinent hereto, but denying the unconstitutionality of the ordinance. It responds to the instant motion briefly, by arguing that this court is bound by the recent decision of the Appellate Division of the Superior Court of New Jersey in *Parsippany Hills Associates v. Rent Leveling Board of the Township of Parsippany-Troy Hills*, 194 N.J.Super. 34, 476 A.2d 271 (App.Div.1984). There, the court upheld a seventy-five percent pass-through provision, such as that now in effect in Nutley, as against challenges based primarily upon the legislative intent behind the particular ordinance at issue, 194 N.J.Super. at 44–46, 476 A.2d 271, and the preemptive effect of the New Jersey Tenants' Property Tax Rebate Act, N.J.Stat.Ann. 54:4–6.2 *et seq.* 194 N.J.Super. at 46–51, 476 A.2d 271. Thus, although the Township urges that the dictates of comity and federalism require the court to "treat the State Court resolution of the issue in this case as definitive," Defendant's Brief at 3, the fact is that the issues here presented were not considered or decided by the Appellate Division. The court must, therefore, proceed to address the merits of the instant application, essentially without the benefit of briefing by defendant.

## DISCUSSION

### A. *Access to the Courts*

Plaintiff first contends that the ordinance here at issue punishes the taxpayer

who seeks the just resolution of a legitimate tax dispute in the courts of the State of New Jersey. Thus, in this particular case, plaintiff originally claimed that it was being taxed at a disproportionately high level relative to other taxpayers in the Township. *See* Plaintiff's Brief at 6–7, and Plaintiff's Appendix at 3–6, 26. Because the cause of action based upon this claim has been held not to constitute a federal question, whether it seeks injunctive relief, 28 U.S.C. § 1341, declaratory relief, *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), or damages, *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 113–15, 102 S.Ct. 177, 184–86, 70 L.Ed.2d 271 (1981) (including claim for unequal assessment), plaintiff's sole recourse was to the state courts. Insofar as the ordinance discourages utilization of this avenue, plaintiff argues that it is arbitrary, capricious and unreasonable, all in violation of the due process clause. Insofar as the effect of the ordinance was to create a punishment for, and with it a disincentive to, the utilization of the only courts available to adjudicate these disputes, plaintiff claims that it "violates a recognized constitutional right." Plaintiff's Brief at 12.

These arguments are meritless. Plaintiff's first argument turns on its contention that "the only conceivable purpose for enacting [the ordinance] is the deprivation of the economic incentive to contest local property tax assessments, and therefore no rational, legitimate purpose exists for the enactment of this provision." *Id.* at 10–11. This is, of course, untrue. As the Appellate Division aptly summarized, far more beneficent purposes underlie the ordinance:

> We see no reason why the municipal officials in the enactment of an ordinance may not also recognize that a portion of the tenants' rent includes taxes. Thus, when the taxes are reduced as a result of a change in the assessment upon the appeal of the landlord, an ordinance may provide that such reduction in taxes be shared with the tenants on some equitable formula.

*Parsippany Hills Associates, supra,* 194 N.J.Super. at 50–51, 476 A.2d 271.

It is nonetheless true that the ordinance is not a model of perfect draftsmanship. Indeed, it suffers from two fairly major defects. First, the ordinance does not necessarily distinguish between landlords who may have and have passed tax increases on to tenants and those who have and may not. Thus, a landlord whose taxes are increased may pass such increase on to tenants only if the increase places the landlord in a position where he is eligible for a "hardship rental increase," or if apartment vacancies occur and new rent levels are set. As a result, the ordinance irrationally distinguishes between two landlords, one who, for reasons beyond his control, is unable to pass such claimed over-taxation on to his tenants, and the other who is properly taxed in the first place. As to the former, when his taxes are adjusted to their appropriate level, he will lose seventy-five percent of the rebate accordingly granted. This, of course, is not a problem for the latter. The result is an obvious inequity.

Second, as constructed, the ordinance does not necessarily afford a rebate to the particular tenants to whom a landlord passed on tax increases. Current tenants are the beneficiaries of a windfall which might have been paid by prior tenants, who were subject to, for example, hardship rental increases. Still more commonly, tenants subject to increased rent, as a result of increased taxes, because they occupied previously vacated apartments or were the original tenants of a particular unit, get the same rebate as tenants whose rent was absolutely unaffected by tax increases incurred by the landlord.

▉ These imperfections to the contrary notwithstanding, the court finds the ordinance to withstand constitutional scrutiny under either the due process or equal protection clauses. As plaintiff concedes, *see* Plaintiff's Brief at 10, the issue before the court involves economic regulation, and no suspect classification such as race or the exercise of a constitutional right is implicated. As such, the ordinance "need only

be tested under the lenient standard of rationality ... traditionally applied in considering equal protection challenges to regulation of economic and commercial matters." *Exxon Corp. v. Eagerton,* 462 U.S. 176, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983), citing *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 461–63, 101 S.Ct. 715, 722–23, 66 L.Ed.2d 659 (1981); *Kotch v. Board of River Pilot Commissioners,* 330 U.S. 552, 564, 67 S.Ct. 910, 916, 91 L.Ed. 1093 (1947). This standard, which also applies to plaintiff's substantive due process challenge, *see, e.g., Cospito v. Heckler,* 742 F.2d 72, 84 (3d Cir.1984), engenders a two-pronged analysis:

> (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

*Western & Southern Life Insurance, supra,* 451 U.S. at 668, 101 S.Ct. at 2083. As to the former, there can be no doubt of the legitimacy of state rent control ordinances in general, *see, e.g., Orange Taxpayers Council, Inc. v. City of Orange,* 83 N.J. 246, 254–57, 416 A.2d 353 (1980) (citing cases); *see also Bowles v. Willingham,* 321 U.S. 503, 516–19, 64 S.Ct. 641, 648–49, 88 L.Ed. 892 (1944), and, as the court has noted, pass-through provisions such as the one here at issue in particular. *See, e.g., Cold Indian Springs Corp. v. Township of Ocean,* 81 N.J. 502, 511–13, 410 A.2d 652 (1980); *Parsippany Hills, supra,* 194 N.J. Super. at 50–51, 476 A.2d 271; *Orange Taxpayers Council, Inc. v. City of Orange,* 169 N.J.Super. 288, 299–300, 404 A.2d 1186 (App.Div.1979), *aff'd,* 83 N.J. 246, 416 A.2d 353 (1980); *Inganamort v. Borough of Fort Lee,* 120 N.J.Super. 286, 301–02, 293 A.2d 720 (Law Div.1972), *aff'd,* 62 N.J. 521, 303 A.2d 298 (1973). Thus, defendant clearly has a legitimate interest in regulating rents in a manner which prevents landlords from passing tax increases on to tenants, while reaping the windfall of subsequent tax rebates.

 The question thus becomes one of the relationship between this goal and the means adopted by defendant to reach it, as embodied in the ordinance. The rational relationship test mandates a limited role for the court in this regard. *See, e.g., Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981).

> When local economic regulation is challenged solely as violating the equal protection clause, this court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under the police powers, and rational distinctions may be made with less than mathematical exactitude. Legislatures may implement their program step by step, in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the fourteenth amendment.

*City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (citations and footnote omitted). Thus, the fact that the fit between a provision and its goals is imperfect, that a classification "is not made with mathematical nicety or ... in practice it results in some inequality," does not require its invalidation. *Dandridge v. Wil-*

*liams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *cited in Tustin v. Heckler,* 749 F.2d 1055, 1061 (3d Cir. 1984). Nor is overinclusiveness or underinclusiveness fatal to a classification, for equal protection or due process purposes. *See, e.g., Vance v. Bradley,* 440 U.S. 93, 108, 99 S.Ct. 939, 948, 59 L.Ed.2d 171 (1979). *See also Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522 (1975), *cited in Cospito v. Heckler, supra,* 742 F.2d at 84–85. Indeed, even the existence of a better method of achieving the ends sought is not enough for, as the Supreme Court has stated, "Whether we, or the District Court, think Congress was unwise in not choosing means more precisely related to its primary purpose is irrelevant." *Vance v. Bradley, supra,* 440 U.S. at 109, 99 S.Ct. at 949. "The law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction and that it might be thought that the particular legislative measure was a rational way to correct it." *Rogin v. Bensalem Township,* 616 F.2d 680, 689 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), quoting *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955). Thus, in cases such as these, the party challenging the statute bears a heavy burden indeed: "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Minnesota v. Clover Leaf Creamery, supra,* 449 U.S. at 464, 101 S.Ct. at 724 (citing cases). *See also Malmed v. Thornburgh,* 621 F.2d 565, 570–72 (3d Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).[1]

This is a burden which plaintiff has failed to bear. As noted above, the ordinance at issue is not perfect. However, its imperfections simply do not rise to a constitutional level. Thus, the ordinance aims to allow tenants who have shared the cost of a tax increase also to share the benefit of a tax rebate, should one occur. That it accomplishes this with a pass-through provision which rebates money to a tenant even though his landlord was not necessarily able to pass a prior tax increase through to him is, to be sure, problematic. It is not, however, fatal. The ordinance comprises one step down the road toward assuring that landlords share tax rebates with tenants with whom they have shared tax increases. Indeed, plaintiff has presented no factual evidence, known or available to the drafters of the ordinance, to suggest that tax increases are not *generally* passed on to tenants. It might well be the case that they are. Thus, because hardship rental increases specifically take tax increases into account, the drafters of the ordinance may reasonably have concluded that at least large tax increases would be passed along to tenants. Similarly, the drafters may have known that vacancies occur sufficiently frequently, and/or tax increases sufficiently infrequently, so that rent levels generally reflect taxes, if somewhat imperfectly. That a system in which increases are directly passed on to tenants, and tax rebates similarly passed through to them, would more perfectly accomplish the goal sought by the municipality, is, as noted above, "irrelevant." The current ordinance makes provision in several ways for rent levels to reflect tax increases, particularly large tax increases which are more likely to push a landlord into the hardship category. Section 180–10.1 provides that, if and when a landlord receives a tax rebate, he must pass seventy-five percent of it on to tenants. In this sense, it accomplishes the goal sought; that it does not do so with

---

**1.** To the extent that the issue before the court is viewed as a tax matter, as was the pass-through provision in *Exxon Corp. v. Eagerton, supra,* still greater deference to legislative authorities is called for. 103 S.Ct. at 2308, citing *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983); *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973); *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 526–27, 79 S.Ct. 437, 440–41, 3 L.Ed.2d 480 (1959).

"mathematical exactitude" does not render it unconstitutional. Nor does the fact that the wrong tenants may be the recipients of a rebate pass-through affect the ordinance's unconstitutionality, especially where, as here, no protesting tenants appear before the court. Some tenants receive rebates; many of them may have paid for the prior tax increase. Facts to the contrary have not been presented by plaintiff. Indeed, the court understands that a more perfect system, in which those tenants who have paid tax increases are tracked down in order to be paid rebates to which they are thus entitled, might comprise an expensive and unenforceable arrangement. The one that exists is adequate for due process and equal protection purposes.

In sum, the court is aware that, as drafted, the ordinance disadvantages certain landlords who are incorrectly assessed vis a vis similarly situated, but correctly assessed, landlords. This is an unfortunate bi-product of the ordinance, but one that is of such unknown frequency, and is the result of a policy which utilizes rational means to achieve legitimate ends, that the court cannot find the ordinance to be constitutionally defective.[2] For these reasons, the court finds plaintiff's due process and equal protection arguments to be without merit.

 Nor is plaintiff correct that the ordinance impermissibly restricts access to the courts, by creating a disincentive to the pursuit of tax appeals. First, such argument ignores the realities which landlords face. As the Appellate Division has noted, the argument "overlooks that financial incentive to landlords to correct excessive assessments through tax appeals in order to maintain their competitive position by reducing rents comparably." *Hilltop As-*

sociates v. Mayor and Council of the Township of Edison, 181 N.J.Super. 100, 104, 436 A.2d 939 (App.Div.1981), certif. den., 91 N.J. 231, 450 A.2d 555 (1982). Similarly, landlords will continue to pursue such appeals, not only to collect the twenty-five percent of the rebate due them,[3] but also to reduce the tax burden on their property, and consequently, to raise its market value. And finally, to the extent that plaintiff's argument is based upon the public policy concern that inequitable tax assessments will not be corrected if landlords do not have the financial incentive to pursue these claims, *see Hilltop Associates, supra,* 181 N.J.Super. at 104, 436 A.2d 939, such argument is undercut by tenants' clear standing to prosecute such appeals. *See Parsippany Hills Associates, supra,* 194 N.J.Super. at 43, 476 A.2d 271 (noting that it is "a close question" as to whether tenants have a vested right to rebates, and alluding to a class action filed by tenants). *See generally Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) ("at an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision'") (citing cases). *See also Cold Indian Springs Corp. v. Ocean Township,* 154 N.J.Super. 75, 88, 380 A.2d 1178 (Law Div.1977) (tenants showed "a direct financial interest" in litigation concerning the constitutionality of the Tenants' Property Rebate Act, and were accordingly allowed to intervene), *aff'd,* 161 N.J.Super. 586, 392 A.2d 175

---

**2.** Plaintiff's motion for summary judgment does not argue a violation of the equal protection clause, and thus does not raise the equal protection arguments addressed here, which are implicated by the Fourth Count of the Complaint.

**3.** The Appellate Division has expressed some doubt as to whether this incentive would exist

were there to be a one hundred percent pass through, *Hilltop Associates, supra,* 181 N.J.Super. at 105, 436 A.2d 939, but such doubts apparently disappear where, as here, the pass through is seventy-five percent. *Parsippany Hills Associates, supra,* 194 N.J.Super. at 51, 476 A.2d 271.

(App.Div.1978), *aff'd*, 81 N.J. 502, 410 A.2d 652 (1980).

For these reasons, plaintiff's motion for summary judgment on these grounds must be denied. The cases cited by plaintiff are inapposite: *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) involved the constitutionality of requiring indigent parties to pay filing fees in order to obtain a divorce. The Supreme Court held that

> given the basic position of the marriage relationship in this society's hierachy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriage.

401 U.S. at 374, 91 S.Ct. at 784. As plaintiff concedes, no such fundamental rights are involved here, *see Graham v. Office of Surface Mining Reclamation and Enforcement*, 722 F.2d 1106, 1112 (3d Cir. 1983) (economic rights are merely pecuniary, and not fundamental), citing *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *cf., Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (state may not require indigent party to pay for blood test in paternity proceeding); nor is access to the courts denied in any fundamental manner. Indeed, it continues to be encouraged by the ordinance, if less so than it would have been absent any ordinance at all.

Neither is *Silver v. Cormier*, 529 F.2d 161 (10th Cir.1976), applicable to the instant situation: there, the defendant, a state agency, withheld funds legally owing to plaintiff when plaintiff filed suit against defendant based upon a different, though related dispute. 529 F.2d at 162–63. At issue was a penalty upon the commencement of litigation itself, *see also McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir. 1984) (*en banc*) (citing cases); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir.1981)

(citing cases); here, legitimate state regulation limits plaintiff's ultimate recovery and, as such, may or may not affect its decision to proceed. In evaluating a state regulation which may discourage access to the courts, the court must balance the public and private interests involved. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n. 5, 102 S.Ct. 1148, 1154 n. 5, 71 L.Ed.2d 265 (1982); *In re South*, 689 F.2d 162, 165 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983). Here, such balance reveals an ordinance that is of demonstrated public interest, *see supra* at 1165–1168, that may well have no demonstrable effect on a party's willingness to utilize the courts, and that, at most, has an impact upon such party's pursuit of economic, rather than fundamental, rights. The costs thus imposed by this ordinance are small and the benefits are large. For this reason, plaintiff's motion for summary judgment on this ground is denied.

### B. Taking of Property Without Just Compensation

▮▮▮▮▮ Plaintiff's argument that a taking has occurred is two-pronged. First, it contends that the ordinance effects a confiscation of what is essentially plaintiff's property for what is, at best, a public benefit, without paying to plaintiff the compensation due it under the fifth amendment to the United States Constitution. And second, it argues that such taking is not "for public use" and thus constitutes an improper exercise of the police power for the benefit of certain private individuals only. Both of these contentions conceptually overlap with plaintiff's due process arguments, in that the question of what constitutes a taking requiring just compensation, as well as of when such taking is for public use, turn on the public benefit reasonably sought to be achieved by the challenged provision. *See, e.g., United States v. Geophysical Corp.*, 732 F.2d 693, 700 (9th Cir. 1984) (no taking where government imposes financial condition upon receipt of debt, which condition is rationally related to the condition imposed); *Chatham v. Jackson*,

613 F.2d 73, 78–80 (5th Cir.1980) (requiring landlord to pay tenant's delinquent water bill does not constitute a compensable taking in that measure is rationally related to city's goal of fiscal soundness); *Exxon Corp. v. Federal Energy Administration,* 417 F.Supp. 516, 523 (D.N.J.1975) (Lacey, J.) (Cost Equalization Program of Emergency Petroleum Allocation Act of 1973 held not to be a taking in that any loss of profits results from a "valid regulatory scheme").

This is so, in part, because of the structure of takings analysis. The Supreme Court has recently summarized such doctrine as follows:

> As has been admitted on numerous occasions, "this Court has generally 'been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action'" must be deemed a compensable taking. *Kaiser Aetna v. United States,* 444 U.S. 164, 175 [100 S.Ct. 383, 390, 62 L.Ed.2d 332] (1979), quoting *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124 [98 S.Ct. 2646, 2659, 57 L.Ed.2d 631] (1978); *accord, Hodel v. Virginia Surface Mining and Recl. Ass'n.,* 452 U.S. 264, 295 [101 S.Ct. 2352, 2370, 69 L.Ed.2d 1] (1981). The inquiry into whether a taking has occurred is essentially an "ad hoc, factual" inquiry. *Kaiser Aetna,* 444 U.S. at 175 [100 S.Ct. at 390]. The Court, however, has identified several factors that should be taken into account when determining whether a governmental action has gone beyond "regulation" and effects a "taking." Among these factors are: "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Prune-Yard Shopping Center v. Robins,* 447 U.S. 74, 83 [100 S.Ct. 2035, 2042, 64 L.Ed.2d 741] (1980); *see Kaiser Aetna,* 444 U.S. at 175 [100 S.Ct. at 390]; *Penn Central,* 438 U.S. at 124 [98 S.Ct. at 2659].

*Ruckelshaus v. Monsanto Corp.,* —— U.S. ——, 104 S.Ct. 2862, 2874–75, 81 L.Ed.2d 815 (1984). This court has already focused on the first of three factors to be considered, and has found the ordinance at issue to constitute legitimate governmental action, taken in a manner rationally related to the accomplishment of the ends sought. Because the interference here at issue "arises from some public program adjusting the benefits and burdens of economic life to promote the common good," *Penn Central, supra,* 438 U.S. at 124, 98 S.Ct. at 2659, and in so doing "substantially advance[s] legitimate state interests," *Nectow v. Cambridge,* 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928), *cited in Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), it is less likely to be a taking than, for example, physical invasions, *see, e.g., Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), the denial of the economically viable use of property, *Agins, supra,* 447 U.S. at 260, 100 S.Ct. at 2141, citing *Penn Central, supra,* 438 U.S. at 138 n. 36, 98 S.Ct. at 2666 n. 36, or the extinction of a fundamental attribute of ownership, such as the right to exclude. *See, e.g., Ruckelshaus v. Monsanto, supra,* 104 S.Ct. at 2878, citing *Kaiser Aetna,* 444 U.S. at 176, 100 S.Ct. at 391. This is because, as stated by Justice Holmes, "Government could hardly go on if to some extent values incident to property could not be diminished without paying for every change in the general law." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922). For these reasons, "[e]xercises of the taxing power," and "land-use regulations that destroyed or adversely affected recognized property interests," for example, have been held not to constitute compensable takings. *Penn Central, supra,* 438 U.S. at 124–25, 98 S.Ct. at 2659–60 (citing cases). *See also Matter of Quanta Resources Corp.,* 739 F.2d 912, 922 n. 11 (3d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 319 (1985).

Courts have accordingly upheld rent control ordinances as against takings chal-

lenges. *See, e.g., Bowles v. Willingham, supra; Block v. Hirsh,* 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921). *See also Hutton Park Gardens v. West Orange Town Council,* 68 N.J. 543, 565–72, 350 A.2d 1 (1975) (rent control not unconstitutionally "confiscatory" so long as it permits a just and reasonable return); *Brunetti v. Borough of New Milford,* 68 N.J. 576, 595–98, 350 A.2d 19 (1975) (same); *Troy Hills Village v. Parsippany-Troy Hills Township Council,* 68 N.J. 604, 620–30, 350 A.2d 34 (1975) (same). *See generally Matter of Egg Harbor Associates (Bayshore Centre),* 94 N.J. 358, 373–74, 464 A.2d 1115 (1983). To an extent, of course, the ordinance here at issue is a rent control ordinance: it requires that rents be set at lower amounts for a limited period of time following a successful tax appeal by a landlord. Because such ordinance is ensconced in the heavily regulated landlord/tenant area, *see, e.g., Loretto, supra,* 458 U.S. at 440, 102 S.Ct. at 3178, the court cannot find that plaintiff could, or should, have had investment-backed expectations of a certain rent at a certain time. Moreover, to the extent that plaintiff's "expectation" of a reward as a result of its efforts in seeking tax relief are what are here "interfered with," the ordinance provides that the "investment" giving rise to such expectation—that is, the litigation expense of a tax appeal—be returned to plaintiff. § 180–10.1.

Most important, however, the purposes underlying the ordinance serve both to minimize the reasonableness of any expectations that plaintiff may have had to the full rebate, and diminish the economic impact upon one in plaintiff's position. Thus, the court's earlier finding that the ordinance is reasonably related to the legitimate public interest in preventing tax rebates resulting from the overpayment of taxes by both

landlord and tenant to accrue solely to the benefit of the landlord, has two important consequences for takings analysis. First, it means that landlords, having passed on at least some of their tax increases to tenants, ought not expect tax rebates necessarily to accrue solely to themselves. And second, it means that the economic impact of receiving only seventy-five percent of a rebate is minimal: having passed on tax increases to tenants, landlords do not deserve all of the subsequent tax rebates. Finally, as noted above, the impact upon landlords of a rebate is positive notwithstanding the ordinance, in that the landlord continues to reap the benefits of a rebate in terms of increased property value and competitive capability.

In sum, unlike the situation in *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), upon which plaintiff relies almost exclusively, *see* Plaintiff's Brief at 18–19, there is a significant police power justification offered for the deprivation here imposed, one that bears a reasonable relationship to the legitimate goals of the ordinance. *Cf., Webb's, supra,* 449 U.S. at 163, 101 S.Ct. at 451–52. For this reason, and because neither the legitimate investment-backed expectations of, nor the economic impact upon, plaintiff reveal a sufficient deprivation of plaintiff's property interests, the court here finds no taking to have occurred, and accordingly denies plaintiff's application for summary judgment.[4]

## C. *Impairment of Contract*

 Finally, plaintiff contends that the ordinance, which was passed on September 23, 1982, retroactively impaired contracts entered into between it and its tenants, and affected taxes paid and litigation

---

**4.** As such, the question of whether such taking was for private use need not be reached. However, having held that the ordinance engenders a valid exercise of defendant's police power, it must also be concluded that it satisfies the "public use" requirement of the fifth amendment. *See Hawaii Housing Authority v. Midkiff,* — U.S. ——, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) ("The 'public use' requirement is ... co-

terminous with the scope of a sovereign's police powers ... where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause.") (citing cases). *See also Ruckelshaus v. Monstanto, supra,* 104 S.Ct. at 2879–80.

commenced prior to that date and, since it serves no "legitimate public purpose," violates the contract clause. U.S. Const. Art. I, § 10, cl. 1. That clause declares that "No state shall ... pass any ... Law impairing the Obligation of Contracts...." The Supreme Court has recently summarized contemporary analysis under the contract clause, writing

> The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past. The Court long ago observed: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them."
>
> If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem. Furthermore, since [*Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934)], the Court has indicated that the public purpose need not be addressed to an emergency or temporary situation. *One legitimate state interest is the elimination of unforeseen windfall profits.* The requirement of a legitimate public

purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.

> Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption. Unless the State itself is a contracting party, "[a]s is customary in reviewing economic and social regulation, ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–13, 103 S.Ct. 697, 704–06, 74 L.Ed.2d 569 (1983) (citations and footnotes omitted) (emphasis added). *See also Troy, Ltd. v. Renna,* 727 F.2d 287, 294–99 (3d Cir.1984).

This analysis has obvious similarities to the due process and takings analyses undertaken above. *See Hawaii Housing Authority, supra,* 104 S.Ct. at 2330 n. 6 (summarily concluding that, insofar as state action constituted a rational exercise of the police power, it survived challenges under the due process and contract clauses as well). The result, so derived, is also the same. The court continues to find the contracts alleged to be impaired to be only minimally affected: rents, already highly regulated, are merely being temporarily reduced, in light of new facts. *Troy, Ltd., supra,* 727 F.2d at 297 (New Jersey Tenancy Act not a sufficiently severe impairment of contract to be invalidated, in part because "New Jersey had already placed significant limitations upon the rights of owners of multiple dwellings to define the landlord tenant relationship solely in terms of contract").[5] Moreover, the state interest, discussed above, in preventing a windfall to

---

**5.** Plaintiff seems to argue that the contract being impaired is between it and the state. This is not the case: rather, their relationship is as between taxpayer and taxing authority, a relationship which is not generally subject to the strictures of the contract clause. *See Exxon Corp. v. Eagerton, supra,* 103 S.Ct. at 2304–07

(Alabama tax exemption and pass-through provision valid as against contract clause challenge where a "generally applicable rule of conduct designed to advance 'a broad societal interest' rather than a measure whose sole effect was to repeal or effect a covenant between parties") (citing cases).

plaintiffs is significant and legitimate. *See United States Trust Co. v. New Jersey,* 431 U.S. 1, 31 n. 30, 97 S.Ct. 1505, 1522 n. 30, 52 L.Ed.2d 92 (1977). *See also Cold Indian Springs Corp., supra,* 81 N.J. at 512, 410 A.2d 652, citing *El Paso v. Simmons,* 379 U.S. 497, 507–08, 85 S.Ct. 577, 583–84, 13 L.Ed.2d 446 (1965). Finally, giving proper deference to the municipal governing body that enacted the ordinance here at issue, the court cannot but find that the means here adopted do, in fact, serve the desired ends; if the fit between the two is not perfect, it is also not unreasonable or arbitrary. For these reasons, plaintiff's motion for summary judgment on the basis of the contract clause is denied.

### CONCLUSION

The court is aware that the matter before it presents issues of constitutional dimension that have a potential impact upon ordinances in numerous municipalities in New Jersey and elsewhere. The court also recognizes that such ordinances may discourage future building of housing units and thereby disserve the needs of tenants rather than advance them. However, such considerations are properly left to the governing bodies of the municipalities and not the courts. Therefore, the court concludes that plaintiff's constitutional challenge to the ordinance must fail as a matter of law. Accordingly, it denies plaintiff's application for summary judgment for the reasons set forth above, and directs that judgment be entered as against plaintiff, the moving party. No genuine issue of material fact remains and plaintiff has "had a full and fair opportunity to ventilate the issues involved in the motion." *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311–12 (9th Cir. 1982). *See also Missouri Pacific Railroad Co. v. National Milling Co.,* 409 F.2d 882, 885 (3d Cir.1969). *See generally* 6 Moore's *Federal Practice* ¶ 56.12, at 56–331—56–339 (1976); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720, at 27–35 (1983).

An appropriate order will issue.