701 A.2d 452

NEW JERSEY APARTMENT ASSOCIATION, INC. AND LISMARC REALTY MANAGEMENT CORP., RECEIVER FOR DAKOTA REAL ESTATE CO., PLAINTIFFS-APPELLANTS/CROSS-RE-SPONDENTS, AND SOCIETY HILL APARTMENT ASSOCIA-TION, L.P., PLAINTIFF/INTERVENOR, v. DIRECTOR, DIVI-SION OF LOCAL GOVERNMENT SERVICES, DEPARTMENT OF COMMUNITY AFFAIRS, STATE OF NEW JERSEY, DEFEN-DANT-RESPONDENT/CROSS-APPELLANT, AND TAX COL-LECTOR, TOWNSHIP OF WASHINGTON, COUNTY OF GLOU-CESTER, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 10, 1997—Decided September 29, 1997.

446

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*Helen A. Nau* argued the case for appellants/cross-respondents (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer and Gladstone*, attorneys; *Charles X. Gormally*, of counsel; *Ms. Nau*, on the brief).

*Daniel P. Reynolds*, Deputy Attorney General, argued the cause for respondent/cross-appellant Director, Division of Local Government Services, (*Peter Verniero*, Attorney General, attorney; *Joseph A. Yannotti*, Assistant Attorney General, of counsel; *Mr. Reynolds*, on the brief).

*Joseph A. Alacqua*, attorney for respondent Tax Collector, Township of Washington, County of Gloucester, joins in the brief of respondent/cross-appellant Director, Division of Local Government Services.

The opinion of the court was delivered by

COBURN, J.A.D.

This appeal involves interpretation of the Tenants' Property Tax Rebate Act, *N.J.S.A.* 54:4–6.2 to –6.13 (the "Rebate Act"), consideration of its constitutionality, and evaluation of the validity of a rule, *N.J.A.C.* 33–3.8(a) and (b), promulgated by the Director of the Division of Local Government Services, which interpreted the Rebate Act in a manner which is argued to be inconsistent with the Supreme Court's construction of this legislation in *Cold Indian Springs Corp. v. Township of Ocean*, 81 *N.J.* 502, 410 *A.*2d 652 (1980).

The action was filed in the Law Division pursuant to the Declaratory Judgment Act, *N.J.S.A.* 2A:16–50 to –62, by New Jersey Apartment Association, Inc., an organization which represents the interests of landlords, and by Lismarc Realty Management Corp. ("Lismarc"), the receiver for Dakota Real Estate Co., the owner of an apartment complex in the Township of Washington which was sold to plaintiff/intervenor, Society Hill Apartment Association, L.P., on April 13, 1993. The matter was determined below on motions for summary judgment. The Law Division invalidated the rule but rejected plaintiffs' interpretation of the Rebate Act and upheld its constitutionality. Plaintiffs filed a notice of appeal [1] and the Director filed a cross-appeal seeking to sustain the rule. We affirm.

*I.*

The undisputed facts show that the aggregate local property tax assessment in 1990 for the Lismarc property (consisting of four

---

[1] Plaintiff/Intervenor Society Hill Apartment Association, L.P. has withdrawn its notice of appeal.

individually taxed lots) was $24,718,700. The Washington Township assessor revised the aggregate assessment for 1990 and 1991 to $21,000,000. Tax appeals were filed for the 1991 and 1992 tax years. The cases were settled and judgments were entered reducing the aggregate assessments for those years to $19,000,-000. For the 1991 tax year, the judgment was entered by the Tax Court (where the appeal had been filed) on March 31, 1993. For the 1992 tax year, the judgments were entered by the Gloucester County Board of Taxation on May 21, 1992. In accordance with the Freeze Act, *N.J.S.A.* 54:3–26 and *N.J.S.A.* 54:51A–8, the tax assessor reflected the aggregate assessment for 1993 at the $19,-000,000 value based on the 1992 tax year judgments. Thereafter, the Washington Township tax collector mailed tenant rebate notices to the property owner for the year 1993. These notices reflected the base year as 1990 (when the aggregate assessment was $24,718,700) and employed the 1993 current assessment of $19,000,000 as the basis for calculating the tenant rebate.

## II.

Plaintiffs contend that the Rebate Act requires exclusion of all tax appeal judgments from tenant rebate calculations. Therefore, they claim that in this case the tax collector should have based the rebate notice on the $21,000,000 assessment established voluntarily by the tax assessor for the 1991 and 1992 tax years instead of on the $19,000,000 assessment resulting from the consent judgments on the property owner's tax appeals for those years. That position was clearly rejected by the Supreme Court in *Cold Indian Springs Corp., supra,* 81 *N.J.* at 511–12, 410 *A.*2d 652, and does not require further legal analysis.[2]

Plaintiffs also contend that the 1991 amendment of the Rebate Act which increased the tenants' rebate from sixty-five percent to

---

[2] As recognized by the Law Division, even though the 1991 tax appeal was not finalized by judgment of the Tax Court until 1993 (and thus was pending in 1993), the 1992 tax appeal judgment was entered in 1992 and was available under *Cold Indian Springs Corp.* for a rebate comparison in 1993.

one hundred percent of any refund resulting from a tax appeal constitutes a taking of property without due process of law.

Plaintiffs further argue that the 1991 amendment of the Rebate Act which introduced the concept of a "floating" base year, *N.J.S.A.* 54:4–6.3(c), deprives them of equal protection under the law.

Finally, plaintiffs contend the Rebate Act violates Article VIII, § 1, ¶ 1(a) of the New Jersey Constitution which requires uniform rules for real property assessment and taxation.

The Director contends that the Law Division erred in finding *N.J.A.C.* 33–3.8(a) and (b) inconsistent with the Rebate Act as interpreted by the Court in *Cold Indian Springs Corp.*

### III.

The Rebate Act is "based on the legislative recognition that rent levels for qualified real rental property anticipate the tax burden on the rental property. Accordingly, when there is a reduction in that burden, the act requires that the property owner share the reduction with his tenants." *Cold Indian Springs Corp., supra,* 81 *N.J.* at 507–08, 410 *A.*2d 652 (footnote omitted). The formula established by *L.* 1977, c. 81 set the tenants' rebate share at sixty-five percent of the property tax reduction. The 1991 amendment (*L.* 1991, c. 65, § 1) increased the tenants' share to one hundred percent, but otherwise left the applicable section of the statute to read as it had when the Court decided *Cold Indian Springs Corp.*:

> b. "Property tax reduction" means the difference between the amount of property tax paid or payable in any year on any qualified real rental property, exclusive of improvements not included in the assessment on the real property for the base year, and the amount of property tax paid in the base year, but such calculations for the property tax reduction *shall exclude reductions resulting from judgments entered by county boards of taxation, the tax court, or by courts of competent jurisdiction.* "Property tax reduction" shall also include any rebate or refund of school property taxes which may be provided pursuant to *P.L.* 1976, c. 113. "Property tax reduction" shall not include any amount in excess of that which is identified herein. Any such amount shall be retained by the property owner.
>
> [*N.J.S.A.* 54:4–6.3b (emphasis added) (footnote omitted).]

The other important change in the statutory scheme introduced by *L.* 1991, c. 65, § 1 was the redefinition of the base year. In 1977, the base year was defined with reference to the effective date of the act (August 17, 1976) this way:

> c. "Base year" means, for qualified real rental property rented or leased or offered for rent or lease on the effective date of this act, the calendar year prior to the year in which this act takes effect, and for qualified real rental property which is first rented or leased or offered for rent or lease after the effective date of this act, the calendar year in which it is first offered for rent or lease.

> [*N.J.S.A.* 54:4–6.3c (repealed).]

This section, establishing the so-called "floating" base year, now reads (with reference to the act's effective date of March 15, 1991) as follows:

> c. "Base year" means for qualified real rental property rented or leased or offered for rent or lease on or after the effective date of this act, the tax year prior to any year in which the property tax on that property is decreased from the 1990 tax year or decreased from any tax year since the 1990 tax year, whichever tax year results in the largest property tax decrease.

> [*N.J.S.A.* 54:4–6.3c.]

The Director's rule under consideration here was promulgated with an effective date of November 16, 1992, and provides the following in pertinent part:

> (a) The property tax reduction shall take into account judgments entered by a county tax board, the State tax court, or any other court of competent jurisdiction that take effect on or before the date on which the extended tax duplicate is closed for the tax year.

> (b) Tax appeals from any prior year pending on or before the date on which the extended tax duplicate is closed for the tax year, shall be excluded from the calculation for the tax year.

> [*N.J.A.C.* 5:33–3.8 (a) and (b).]

## IV.

Since the validity of *N.J.A.C.* 5:33–3.8(a) and (b) impacts on plaintiffs' constitutional arguments, we will resolve that question first. The Director claims that the rule was adopted in accordance with *Cold Indian Springs Corp.*'s construction of *N.J.S.A.* 54:4–6.3b. The difficulty with that position, at least from our point of view as an intermediate appellate court, is that the critical statutory language has not been amended since the Supreme Court

decided that case. Then, as now, the Rebate Act provides that "such calculations for the property tax reduction shall exclude reductions resulting from judgments entered by" the appropriate adjudicatory agencies or courts. The Supreme Court held:

[The act] ... does exclude from the calculations for the property tax reduction in a rebate year, reductions in assessments for that year resulting from tax appeal judgments. Accordingly, for the tax year or years in which the appeal is pending, any reduction would be excluded from the computation. However, assessments for subsequent tax years would reflect the reduction obtained by the tax appeal judgment and to that extent such reductions would be subject to the rebate provisions of the act.

[81 *N.J.* at 511, 410 *A.*2d 652.]

As the Director notes, the then valid assumption of the Supreme Court was that in almost all tax appeal cases, the initial adjudications for a prior year would occur long after the tax collector was required to prepare and deliver tax bills and rebate notices for the current year. Since the Rebate Act does not contemplate subsequent adjustments of the rebate calculation, pending tax appeals had to be excluded. The Director then notes that the practical concerns confronting the Supreme Court in *Cold Indian Springs Corp.* have since been substantially alleviated by the revised filing date for tax appeals, now April 1 of the given year, *N.J.S.A.* 54:3–21, and by the three-month window given county tax boards to decide these appeals. *N.J.S.A.* 54:3–26. Thus, today many final tax appeal judgments will have been entered before the tax collector has to prepare and deliver tax bills to property owners. While that is so, it also must be recognized that when *Cold Indian Springs Corp.* was decided there already existed the possibility that tax appeal judgments for the prior year would be decided before preparation of the tax bills for the current, or rebate, year. That this circumstance will be present more often now does not provide warrant for us to construe the statute in a manner inconsistent with the construction placed upon the statute by the Supreme Court. Moreover, when the Legislature in 1991 amended the Rebate Act to increase the tenant rebate from sixty-five to one hundred percent, it was aware that under *Cold Indian Springs Corp.* the property owner would at least benefit directly

from a tax appeal by receiving the full reduction for the rebate year or years in which an appeal was pending. By then the improvements in the processing of tax appeals to which the Director has referred were already in place; and, had it wanted to do so, the Legislature could have amended the critical language of *N.J.S.A.* 54:4–6.3(b) to accomplish the result sought in this litigation by the Director. Since the language was left untouched, it is appropriate that we not reconsider the gloss placed on that language by the Supreme Court. Therefore, we affirm the judgment entered below holding that *N.J.A.C.* 5.33–3.8(a) and (b) is invalid.

## V.

We next turn to plaintiffs' contention that the requirement of a one hundred percent tenant rebate is an unconstitutional taking of property without due process of law. This argument, however, is presented on the assumption that the Director's rule, which the Law Division and we have rejected, would be applicable, and would thus allegedly eliminate any incentive for a property owner to file a tax appeal since the appeal would most likely be decided before the tax bills were prepared for the current, or rebate, year. Since the premise of the argument no longer exists, extended discussion of this point is unnecessary. We note, in passing, that an unconstitutional taking occurs when a statutory scheme does not substantially advance a legitimate public interest and excessively interferes with property rights and interests. *Gardner v. New Jersey Pinelands Comm'n,* 125 *N.J.* 193, 205, 593 *A.*2d 251 (1991). The Rebate Act was premised on the legislative recognition that landlords derive the money they need to pay their property taxes from the rent charged their tenants. Accordingly, when that tax burden is reduced, it is the tenants, and not the landlords, who should be reimbursed because they are the ones who have paid out-of-pocket. Therefore, no unlawful taking would appear to occur even if the tenants received one hundred percent of the tax reduction. Furthermore, there are other incentives for tax appeals such as achieving a competitive edge in the market-

place and increasing the value of the property. *Hilltop Assoc. v. Mayor and Council of the Township of Edison,* 181 *N.J.Super.* 100, 104, 436 *A.*2d 939 (App.Div.1981), *certif. denied,* 91 *N.J.* 231, 450 *A.*2d 555 (1982); *Gateway Apartments, Inc. v. Mayor and Township Council of the Township of Nutley,* 605 *F.Supp.* 1161, 1168–71 (D.N.J.1985).

## VI.

■  Plaintiffs next maintain the Law Division erred in rejecting their contention that the "floating" base year definition in the 1991 amendment to *N.J.S.A.* 54:4–6.3(c) constitutes a violation of their equal protection rights under the state and federal constitutions.

■  Because every presumption in favor of constitutionality must be extended to an act of the Legislature, "[o]nly a statute 'clearly repugnant to the constitution' will be declared void." *Town of Secaucus v. Hudson County Bd. of Taxation,* 133 *N.J.* 482, 492–93, 628 *A.*2d 288 (1993) (quoting *Newark Superior Officers Ass'n v. City of Newark,* 98 *N.J.* 212, 222–23, 486 *A.*2d 305 (1985)).  The burden is on the party challenging the legislation to establish that it violates a constitutional provision. *Drew Associates v. Travisano,* 122 *N.J.* 249, 264, 584 *A.*2d 807 (1991).

■  Under federal equal protection analysis, legislation which does not involve a fundamental right or a suspect or semi-suspect class will be deemed constitutional if it is rationally related to a legitimate state interest. *Id.* at 259, 584 *A.*2d 807.  Because our Supreme Court has concluded that the Rebate Act "constitutes a form of economic regulation and does not involve a suspect classification or a fundamental right," the Act will withstand an equal protection challenge upon satisfaction of this rational basis test. *Cold Indian Springs, supra,* 81 *N.J.* at 511, 410 *A.*2d 652.

Prior to the 1991 amendments to the Rebate Act, *N.J.S.A.* 54:4–6.3(c) specified the "base year" to be utilized when calculating tenant rebates.  For existing qualified rental properties, the "base year" was identified as the calendar year prior to the effective

date of the Rebate Act. If the property was first rented after the effective date of the Rebate Act, the calculation was to be made utilizing the tax figures from the year of first rental. In 1991, however, this provision was amended to require use of a "floating" base year of either 1990 or any year thereafter, whichever tax year would result in the largest property tax decrease.

Plaintiffs identify the legitimate state interest involved in providing a base year definition under the Rebate Act as establishing "a workable method for computing the property tax reduction on [a]ffected rental properties." However, they contend that the Legislature's definition in this instance creates unfair and disparate results because "[t]wo similarly situated apartment complexes ... may be subjected to base years that reflect totally different economic situations and thus yield different property tax reductions." In plaintiffs' view, two similar apartment complexes with identical current assessments should be treated exactly the same with respect to tenants' rebates, regardless of varying assessment histories.

■ The primary purpose of the Rebate Act is to ensure that tenants, whose rental payments correspond to the landlord's property tax burden, receive the benefit of any reduction in that burden. Because of this correlation between property taxes and rent, increased assessments suggest corresponding rent increases. Thus, contrary to plaintiffs' position, two properties with identical current assessments, but varying assessment histories, cannot be considered substantially similar because the rents being charged the respective tenants would vary. By utilizing a "floating," rather than a static, base year in the rebate calculation, the Legislature has both prevented certain landlords from avoiding the Rebate Act's effect, as well as addressed the likelihood that rents will not be decreased following a property tax reduction. By amending the Rebate Act to provide for a "floating" base year, the Legislature has guaranteed that more tenants will receive a reality-based rebate, a result clearly in accordance with the overall purposes of the Rebate Act. Accordingly, we reject plaintiffs' equal protection argument.

## VII.

■ Lastly, plaintiffs argue that the "base year" definition included in the 1991 amendments to the Rebate Act results in a violation of the Uniformity Clause of the New Jersey State Constitution[3] because similarly-situated properties may be assessed and taxed at different market value standards. We disagree.

As has been noted by our Supreme Court, *N.J. Const.* art. VIII, § 1, ¶ 1(a), requires that "all property be taxed by general laws and uniform rules and that defined real property be assessed at the same standard of value and at the general rate of the taxing district for its use." *New Jersey State League of Municipalities v. Kimmelman*, 105 *N.J.* 422, 427–28, 522 *A.*2d 430 (1987).

Plaintiffs argue that because rental properties can be assigned a value and assessed for tax purposes based upon income generated, and because property tax reductions resulting from tax appeals may, pursuant to the Rebate Act, be factored into rebate calculations for successive years, thereby affecting the income generated, the Rebate Act has created a subcategory of properties which are "assessed and taxed at a market value standard different than that applied to other properties." Additionally, plaintiffs insist that the Rebate Act also violates the Uniformity Clause because, although legally entitled to recover tax appeal relief, owners of rental properties subject to the Rebate Act are denied the benefit of this relief through the rebates they are required to provide.

In rejecting these arguments, the Law Division observed:

> One hundred percent true value is still the common uniform scheme to value real property. Nothing changes under the Tenants Property Tax Rebate Act. Therefore, in my opinion, there's no violation of the uniformity clause.

---

3 "Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district." N.J. Const. art. VIII, § 1, ¶ 1(a).

The trial court was correct in rejecting this constitutional challenge to the Rebate Act. First, as noted by defendants, the various provisions of the Rebate Act in no way require that subject properties be assessed or taxed differently than other properties which do not fall under the Rebate Act. Additionally, plaintiffs' two arguments, which deal with what they perceive as the unconstitutional effect of the Rebate Act, ignore the fact that any necessary rebate payment will always be offset by previously collected rent payments. Because property owners will never be paying out-of-pocket, the market value of qualifying rental properties will not be affected by the rebate obligation imposed under the Act, even if that value is calculated using an income approach. It is not the benefit of tax appeal relief which is being denied to qualifying property owners, but, rather, a windfall at the expense of previously overcharged tenants. As such, the Rebate Act does not violate the Uniformity Clause.

Affirmed.