LOGAN, Circuit Judge.
 

 The only issue in this appeal is the constitutionality of the requirement adopted by the Judicial Conference of the United States, pursuant to 28 U.S.C. § 1930(b), that creditors who initiate adversary bankruptcy proceedings pay a $60 filing fee.
 
 [1]
 

 Otasco, Inc. operates a retail store in Oklahoma City, through which it sold automobile tires and other personal property to
 
 *164
 
 Ronald Gene South and Terry Lynn Kling-man. The sales were made on credit, and Otasco retained a security interest in the goods. Subsequently, South and Klingman separately defaulted on their indebtedness, and Otasco instituted legal proceedings in state court for personal judgments against the debtors and repossession of the goods.
 

 During the pendency of the state proceedings South and Klingman each filed voluntary petitions in bankruptcy naming Otasco as a creditor. Pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § 362, Otasco’s state court proceedings were automatically stayed. By routine orders the bankruptcy court set dates by which objections to the discharges of indebtedness were to be filed, stating that if no objections were filed the debts owed Otasco by South and Klingman would be discharged. Otasco filed pleadings seeking relief from the automatic stay and objecting to the discharges. In connection with its pleading in each bankruptcy proceeding Otasco was required to pay a $60 filing fee. Otasco filed a motion asserting that the filing fee requirement was unconstitutional. After permitting the United States to intervene, the bankruptcy court held that the fee requirement violated the Due Process Clause of the Fifth Amendment.
 
 Otasco, Inc. v. United States (In re South),
 
 6 B.R. 645 (Bkrtcy.W.D.Okl.1980). On appeal the district court affirmed, deeming the creditor to be in the position of a defendant.
 

 “The court can but note as emphasized by [Otasco] that ‘a study of the federal fee system reveals that this is the
 
 only instance
 
 under federal law where a fee must be paid by a person against whom proceedings have been instituted.’ No fee is properly chargeable as a condition precedent to a person’s right to
 
 defend
 
 life, liberty or property in a
 
 forum
 
 having
 
 sole, exclusive jurisdiction.”
 

 Otasco, Inc. v. United States (In re South),
 
 10 B.R. 889, 892 (W.D.Okl.1981). The United States appeals and argues that the bankruptcy and district courts erred in concluding that the fee requirement is unconstitutional. We agree with the government, and, therefore, we reverse.
 
 [2]
 

 Otasco’s assertion that the fee requirement violates due process is founded on the theory that creditors of bankrupts are in a defensive posture and the imposition of a filing fee unconstitutionally burdens the creditors’ access to the courts to defend their property rights. Otasco relies heavily upon
 
 Boddie v. Connecticut,
 
 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1973). In
 
 Boddie,
 
 the Court held that indigent persons seeking to litigate fundamental rights could not be denied access to court solely because of their inability to pay the filing fee. The Court reasoned that because divorce court was the only available legal means of dissolving marriage, “[r]esort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court,” 401 U.S. at 376-77, 91 S.Ct. at 785, and that “denial of a defendant’s full access to that process raises grave problems for its legitimacy.”
 
 Id.
 
 at 376, 91 S.Ct. at 785.
 

 Otasco argues that, like the
 
 Boddie
 
 appellants, it is essentially a defendant and that conditioning its access to court upon the payment of a filing fee violates the Due Process Clause. The government contests Otasco’s posture as a defendant, arguing that Otasco may file a proof of claim without paying a fee; if objection to the claim is made the creditor’s rights are adjudicated without fee, and if no objection is made the creditor’s lien survives unaffected by the bankruptcy.
 
 See
 
 11 U.S.C. §§ 501-502.
 
 [3]
 
 
 *165
 
 Otasco makes various counterarguments, based principally upon the debtors’ possession of the goods as exempt property and upon the fact that the value of the assets are constantly declining due to obsolescence and their use by the debtor. We do not resolve whether Otasco may properly be characterized as a defendant, because even if Otasco is a defendant it does not follow that due process requires access to bankruptcy proceedings to be free from the burden of a fee requirement.
 

 The Supreme Court has upheld, in the face of due process challenges, various statutory burdens on a defendant’s access to court. In
 
 Ortwein v. Schwab,
 
 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), the Court held that a state could require indigent welfare recipients to pay filing fees to obtain access to the courts for judicial review of agency determinations reducing their welfare benefits. Similarly, the Court affirmed a decision by a three-judge district court that held constitutional a Louisiana requirement that defendants in a foreclosure action post security prior to resisting foreclosure.
 
 Ross v. Brown Title Corp.,
 
 356 F.Supp. 595 (E.D.La.),
 
 aff’d mem.,
 
 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394 (1973). The Court in
 
 Boddie
 
 did not hold that a defendant’s access to court can never be burdened. Rather, the Court utilized a balancing test and held that Connecticut’s denial of access was unconstitutional because of “the absence of a sufficient countervailing justification for the State’s action.” 401 U.S. at 380-81, 91 S.Ct. at 787. In this and other contexts courts balance the interests of the state against the interests of individuals to determine whether the strictures of due process are satisfied.
 
 See Mathews v. Eldridge,
 
 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976);
 
 Goldberg v. Kelly,
 
 397 U.S. 254, 262-66, 90 S.Ct. 1011, 1017-19, 25 L.Ed.2d 287 (1970);
 
 Cafeteria & Restaurant Workers Union v. McElroy,
 
 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961);
 
 In re Green,
 
 669 F.2d 779 (D.C.Cir.1981).
 
 [4]
 
 The constitutionality of the filing fee, then, turns on whether the fee “unduly” burdens Otasco’s access to the judicial process, which in turn is determined by balancing the interest Otasco seeks to assert in court against the government’s interest in exacting the fee.
 

 Otasco is seeking to preserve its contractual rights of immediate possession, immediate payment in full, and personal recourse against the debtor. None of these rights touch on fundamental interests. Otasco’s contractual rights — economic interests — have “far less constitutional significance than the interest of the
 
 Boddie
 
 appellants.”
 
 Ortwein
 
 v.
 
 Schwab,
 
 410 U.S. at 659, 93 S.Ct. at 1174.
 
 See also United States
 
 v.
 
 Kras,
 
 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973) (“[B]ankruptcy legislation is in the area of economics and social welfare.. . . [T]he applicable standard, in measuring the propriety of Congress’ classification, is that of rational justification.”). The government has at least two identifiable interests in imposing the fee requirement: First, through the fee Congress hopes to recoup some of the costs of the bankruptcy system. Second, the fee may serve to discourage creditors from initiating adversary proceedings in order to exact reaffirmation agreements; the fee ensures, to some minimal degree, that creditors are genuinely contesting discharge rather than
 
 *166
 
 seeking to harass the debtor. In the face of Otasco’s ability to pay the fee, the nonfun-damental nature of Otasco’s interest, and the government’s legitimate interest in levying the fee, we cannot say that the fee requirement unduly burdens Otasco’s access to the judicial process.
 

 Other considerations buttress the conclusion that the fee is not an undue burden. First, were Otasco to seek enforcement of its contract rights in state court, it would be required to pay a filing fee. No one could reasonably contend that the state fee is unconstitutionally burdensome. That the bankruptcy fee is accompanied by a shortened limitations period and a suspension of nonjudicial remedies does not, in our view, render it more burdensome than the state fee.
 
 [5]
 
 Further, without violating due process, Congress could have chosen not to provide procedures for creditors to seek relief from the automatic stay or contest discharge. That Congress instead chose to condition access to such procedures upon the payment of filing fees does not offend the Constitution.
 

 Otasco also argues that because the value of its interest relative to the filing fee renders litigation economically impractical, the fee requirement denies Otasco an opportunity to be heard. This is only admitting that its interest may not be worth the cost of litigation, a question litigants face in almost every lawsuit, particularly considering the American rule that attorney’s fees are not ordinarily recoverable even though the suit is won. See
 
 Alyeska Pipeline Service Co. v. Wilderness Society,
 
 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).
 
 Boddie
 
 did not establish a right to be heard, without payment of fees, in all cases.
 

 “We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship.”
 

 401 U.S. at 382-83, 91 S.Ct. at 788. Here, no fundamental interest is burdened by the filing fee, and, since the government has a legitimate interest in requiring it, the fee does not violate due process.
 

 Otasco’s last argument is that because it must pay the filing fee before being heard, exacting the fee itself is a taking of property without due process. Such an argument could be made against every governmental tax levy. The assertion that uniformly applicable fees and taxes cannot be imposed without an opportunity to be heard was laid to rest nearly seventy years ago by the Supreme Court, speaking through Justice Holmes, and we need not exhume it here:
 

 “Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.”
 

 Bi-Metallic Investment Co. v. State Board of Equalization,
 
 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).
 

 REVERSED AND REMANDED.
 

 [1]
 

 . In addition to holding the fee unconstitutional, the trial court found that when the Judicial Conference established the fee it exceeded its authority under 28 U.S.C. § 1930(b).
 
 Otasco, Inc. v. United States (In re South),
 
 10 B.R. 889 (W.D.Okl.1981). However, on appeal Otasco has conceded the statutory authority for the fee and has limited its arguments to the constitutional issue.
 

 [2]
 

 . We considered whether this case is moot, since
 
 Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,
 
 — U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), declared portions of the Bankruptcy Code to be unconstitutional. However, the Supreme Court stayed its judgment until October 4, 1982, leaving controversies like this one to be resolved during the interim. Further, the fee at issue was not promulgated under the Bankruptcy Code but pursuant to authority vested in the Judicial Conference of the United States by 28 U.S.C. § 1930(b).
 

 [3]
 

 . The government also points out that without payment of a fee Otasco could seek protection of its interest in the collateral under 11 U.S.C.
 
 *165
 
 § 363(e), request sale by the trustee under sections 363(f) or 725, or, if the value of the creditor’s claim exceeds the value of the property (the bankrupt has no equity), Otasco could ask that the property be abandoned under section 554. However, these procedures are not available to Otasco because its interests are in exempt assets not within the control of the trustee.
 

 [4]
 

 . In
 
 Green,
 
 considering a prisoner’s petitions to a court, the D. C. Circuit said,
 

 “That right of access to the courts, however, is neither absolute nor unconditional.
 

 Apart from the necessity of a case-by-case determination of poverty, frivolity or maliciousness, a court may impose conditions upon a litigant — even onerous conditions — so long as they assist the court in making such determinations, and so long as they are, taken together, not so burdensome as to deny the litigant meaningful access to the courts.”
 

 669 F.2d at 785, 786.
 

 [5]
 

 . The bankruptcy court orders had the effect of shortening the limitations period on the defaulted indebtedness. However, that a forum applies its own statute of limitations rather than the limitations period of the forum giving rise to the cause of action does not violate due process.
 
 See Allstate Insurance Co. v. Hague,
 
 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981);
 
 Home Insurance Co. v. Dick,
 
 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930).