**In re SMITH AND SON SEPTIC AND SANITATION SERVICE, Debtor.**

**Bankruptcy No. 86B–05435.**

United States Bankruptcy Court, D. Utah.

July 1, 1988.

---

Jeffrey R. Stephens, Rulon T. Burton & Associates, Salt Lake City, Utah, for Smith and Son Septic and Sanitation Service.

M. John Straley, Salt Lake City, Utah, Asst. U.S. Trustee.

## MEMORANDUM OPINION

JUDITH A. BOULDEN, Bankruptcy Judge.

Pursuant to 11 U.S.C. § 1112, the debtor, Smith and Son Septic and Sanitation Ser-

vice (S & SS & SS) filed a motion to dismiss its chapter 11 case. Because of its failure to pay the quarterly fees required under 28 U.S.C. § 1930(a)(6), the United States trustee (UST) objected to the debtor's motion. The matter was taken under advisement because of the consequences these requests may have upon the parties before the court, all parties in interest and the court itself.

## BACKGROUND

The facts presented to the court indicate that the debtor, a partnership, filed a chapter 11 petition on December 11, 1986. A disclosure statement was approved by the court, but subsequent economic developments of the debtor's business made confirmation of a plan impossible. The debtor subsequently filed a motion to dismiss its chapter 11 case.

At the hearing on dismissal, the UST objected to the motion because of the debtor's failure to pay to the UST the quarterly fees required under 28 U.S.C. § 1930(a)(6). The debtor argued that it had ceased doing business, had no cash flow, and did not have the ability to make the payments owing to the UST. The only remaining asset of the debtor is a Ford truck with a "blown engine and no bed". The parties agree that no purpose would be served by conversion of this case to one under chapter 7. The record reflects that the debtor failed to file monthly financial statements after November 1987, and therefore an accurate determination of the fee owing after that point is not possible. The UST asserts that

the fee owing is at least $450.00. No other parties objected to the dismissal of the debtor's case.

It is the position of the UST, as stated at the hearing, that it will object to dismissal of chapter 11 cases when quarterly fees are due and owing. The UST has requested a "decretal order" regarding this issue that is to be relied upon in this and all future cases. In oral argument, the UST argued that the case should be dismissed but not closed, thereby enabling the court to retain jurisdiction in order to enforce payment of the fee. Both parties were given the opportunity to submit briefs to the court, however, only the UST has submitted a brief. In its brief, the UST modified its argument stating alternatively that 1) under the court's inherent civil contempt power as supplemented by 11 U.S.C. § 105, the debtor should be held in contempt and required to pay the quarterly fees, or 2) upon the UST's motion, the court should enter a money judgment in favor of the UST and against the debtor for the unpaid quarterly fees.

## DISCUSSION

The requirement of chapter 11 debtors to pay the quarterly fees set forth in 28 U.S.C. § 1930(a)(6) is part of the recent modifications to the Bankruptcy Code[1] and an issue of first impression before this court. The establishment of the quarterly fee system was designed to allow the United States trustee program to be self funding.[2] The relevant statutory language indicates:

---

1. Bankruptcy Judges, United States Trustees, and Family Farmer Act of 1986, Pub.L. 99–554, enacted October 27, 1986.

2. 28 U.S.C. § 589a establishes in the Treasury of the United States a special fund known as the United States Trustee System Fund. Those funds are to be made available to the Attorney General without fiscal year limitation for certain specific purposes in connection with the operation of the United States Trustee system. Under subsection (b) the statute enumerates certain fees that are to be deposited in that fund including all of the quarterly fees collected under 28 U.S.C. § 1930(a)(6).

The purpose of this fund is to help defray the operating expenses of the newly created system in much the same way as the Referee's Salary

and Expense Fund of the Bankruptcy Act taxed the users of the court system for funding. The final House report from the Judiciary Committee generally summarizes the views on the funding for the program:

The self-funding mechanism is designed just to fund the U.S. Trustee program—not to make money for the government. If the self-funding mechanism in the bill generates much more money than is needed to fund the Program, Attorney General is directed to transmit to Congress specific recommendations on how the fee structure should be changed.

. . . .

The U.S. Trustee Program should not have to be self-funding. It provides a great service to our country's bankruptcy system. How-

In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first. The fee shall be $150 for each quarter in which disbursements total less than $15,000; $300 for each quarter in which disbursements total $15,000 or more but less than $150,000; $750 for each quarter in which disbursements total $150,000 or more but less than $300,000; $2,250 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $3,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6).[3]

In addition to the quarterly fees that must be paid to the UST, chapter 11 debtors are also required to pay the initial filing fee set forth in 28 U.S.C. § 1930(a)(3) to the clerk of the court as well as fees for adversary proceedings. Under some circumstances the filing fee can be paid in installments or the adversary fees deferred.[4] If a debtor fails to pay the filing fee, the

ever, in this time of budget deficit concerns, self-funding becomes a necessity.
H.REP. N. 99–764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.CODE CONG. & ADMIN. NEWS 5227, 5234–35.

3. The quarterly fee structure as enacted, requires payments that are less than originally designed in the Senate and House versions of law. In the legislation proposed prior to the final bill, the fees were to be paid monthly based on monthly disbursements or a substantial increase in the filing fee based on the total amount of assets. One of the proposed House Bills, H.R. 3664, 99th Cong., 1st Sess. (1985) and the proposed Senate Bill, S. 1961, 99th Cong., 2d Sess. (1986), provided for payment of monthly fees beginning at $100.00 per month for disbursements below $20,000.00, up to $1,000.00 per month for disbursements above $1,000,000.00. House Bill H.R. 2660, 99th Cong., 1st Sess. (1985), set the filing fee at $5,000.00 or three-fourths of one percent of the then current value of the assets of the debtor, whichever is less, but not less than $100.00.

4. 28 U.S.C. § 1930(a) allows for an individual commencing a voluntary case under title 11 to pay the filing fee in installments. Typically, this court requires one-third of the fee to be paid at the time of filing plus one installment of one-third paid within two weeks and the final installment paid prior to the first meeting of creditors.

It has been clearly established that debtors must pay the filing fee by the United States Supreme Court in *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). In *Kras,* the Court establishes that there is no fundamental constitutional right to have debts discharged in bankruptcy without paying the filing fee. *Id.* at 446, 93 S.Ct. at 638.

28 U.S.C. § 1930(b) provides for the Judicial Conference of the United States to determine the fees payable for adversary proceedings. The Judicial Conference has adopted a fee schedule that allows for the deferral of the filing fees for adversary proceedings in some circumstances. The fee schedule provides:

For filing a complaint, a fee should be collected in the same amount as the filing fee prescribed in 28 U.S.C. § 1914(a) for instituting any civil action other than a writ of habeas corpus. If the United States, other than a United States trustee acting as a trustee in a case under Title 11, or a debtor is the plaintiff, no fee is required. If a trustee in a case under Title 11 is the plaintiff, the fee should be payable only from the estate and to the extent there is any estate realized. The exemption granted herein to a debtor is not granted to a debtor in possession.

*Guide to Judiciary Policies and Procedures, Bankruptcy Manual,* Vol. V–A, Chap. II, part B (1983).

The Tenth Circuit has also reviewed 28 U.S.C. § 1930(b) and the Judicial Conference's requirement that a creditor pay a separate filing fee for each adversary proceeding in *In re South,* 689 F.2d 162 (10th Cir.1982). In that case, the court reviewed the constitutionality of requiring a creditor to pay the filing fee that was promulgated by the Judicial Conference. The Tenth Circuit looked with favor on the propriety of the bankruptcy filing fee for the adversary proceeding stating:

The government has at least two identifiable interests in imposing the fee requirement: First, through the fee Congress hopes to recoup some of the costs of the bankruptcy system. Second, the fee may serve to discourage creditors from initiating adversary proceedings in order to exact reaffirmation agreements; the fee ensures, to some minimal degree, that creditors are genuinely contesting discharge rather than seeking to harass the debtor.

*Id.* at 165. Thus, consistent with *Kras,* the Tenth Circuit has accepted the government's right to recoup some of the costs of the bankruptcy system.

court has a specific remedy, i.e., refusal to accept the filing. If a default in installment payments occurs, the court will dismiss the case pursuant to Bankruptcy Rule 1017(b). As far as this court is aware, it is not the policy of the administrative office to attempt to collect unpaid fees through post-dismissal procedures.

Unfortunately, Congress failed to provide any sanction if the quarterly fees are not paid to the UST. Nothing is set forth under Title 28 nor Title 11, that provides for the enforcement of the collection of these fees. Matters have been made additionally confusing by the inclusion of the language in 11 U.S.C. § 1129(a)(12) that impliedly provides that the quarterly fees need not be paid prior to confirmation of a plan so long as the plan provides for payment of all fees on the effective date of the plan.

The bankruptcy courts are now faced with devising a pragmatic method for compelling a chapter 11 debtor to make its quarterly payments to the UST while continuing to ensure the smooth administration of the estate.[5] This court has been able to locate two cases where an objection to dismissal has been filed by the UST for the failure of the debtor to pay the quarterly fees. The court in *In re MotorWorks, Inc.*, 85 B.R. 661 (Bankr.S.D.Ga.1988) dismissed a chapter 11 case over the objection of the UST even though the quarterly fees had not been paid. In *MotorWorks*, it is not apparent if the UST was requesting any relief other than a denial of the dismissal. The court in *MotorWorks* concluded that "[t]here is no difference between these quarterly fees and any other administrative expenses which may remain unpaid in an unsuccessful chapter 11 case." *Id.* at 662 (citing 11 U.S.C. § 503(b) and § 507(a)(1)). The court observed that if the case were not dismissed, it would remain pending with the quarterly fees accruing forever. Creditors would be additionally inhibited because they would be stayed under 11 U.S.C. § 362(a) from pursuing any non-

bankruptcy remedies, plus they would be constantly disadvantaged by the accrual of the UST's quarterly fees. *Id.*

A similar case has also arisen in *In re Rose*, 86 B.R. 439 (Bankr.E.D.Pa.1988), where the UST opposed dismissal and requested that the debtor's chapter 11 case be converted for his failure to pay quarterly fees. In *Rose*, the UST apparently argued that there would be funds to pay its administrative claim if the case were converted. The court in *Rose* determined that conversion was appropriate because of "the failure of the debtor to demonstrate that dismissal better serves the interests of all creditors than conversion". *Id.* at 442. As mentioned above, both parties in the present case argue that no purpose would be served by converting this case to one under chapter 7. However, in this case, the UST has provided to the court possible alternatives to the denial of the dismissal or conversion of the case.

A. REQUEST FOR CONTEMPT ORDER.

■ The UST first suggests that the court order the debtor to pay the quarterly fees owed and if the fees are not paid, hold the debtor in contempt of court. The UST suggests this procedure based on the court's inherent contempt power, along with the power set forth in 11 U.S.C. § 105. This court is mindful of the present debate that exists over the bankruptcy court's contempt power. *See, e.g., Sequoia Auto Brokers, Ltd., Inc.*, 827 F.2d 1281 (9th Cir. 1987), *compare with Matter of Miller*, 81 B.R. 669 (Bankr.M.D.Fla.1988). Regardless of whether this court has the ability to hold parties in contempt, such action is certainly not to be taken lightly. Contempt is a serious sanction that should be exercised only in the most egregious of circumstances and then primarily for the purpose of controlling cases and proceedings, and the behavior of parties before the court. This court believes that to denigrate its contempt power to its use as a collection

5. The United States trustee system is designed in large part to eliminate the court from the process of case administration. In this instance however, it appears that the UST has a conflict of interest between the practical need to remove this lifeless case from the jurisdiction and protection of the court and the self interest of the UST in collecting its fees.

device for the UST was not the intent of Congress.

Section 105 is also cited as a basis for this court to retain jurisdiction over the case and to enter such orders as may be appropriate to collect these fees. It is unclear what order may be appropriate in these circumstances. If the court were asked to issue an order requiring the debtor to pay the fee, it would be merely redundant of the obligation already set forth in the statute. If the debtor fails to make the payment, the court has the alternative of dismissing the case: a circumlocutory action at best. Fines levied upon the debtor likewise would be ineffective. An attempt to extract the fee from debtor's counsel would be unjust and produce a chilling effect on attorneys' willingness to represent chapter 11 debtors.

█ It would be inappropriate to keep this case open until the debtor has been forced to make payment to the UST. To do so would only create an administrative burden to the court system in general and would work substantial hardship upon creditors who are stayed from acting against the assets of the debtor. To some extent, the debtor could, therefore, benefit from its noncompliance with the statute. The court also ought to acknowledge the realities of this case. No blood exists in this turnip. It is questionable whether the Ford truck, the sole remaining asset, is marketable considering the nature of the debtor's business. The numerous practical and procedural problems that would result from the court's granting the UST's requests clearly demonstrate that it would be inappropriate for this court to issue any type of contempt order.

## B. REQUEST FOR MONEY JUDGMENT.

█ The UST next argues in its post argument brief, and by motion, requests this court to grant the UST a money judgment for the unpaid quarterly fees. As a basis for the UST's request, it cites Bankruptcy Rule 9014. Motions to dismiss under 11 U.S.C. § 1112(b) are governed by provisions of Rule 9014. The UST argues that since Rule 9014 incorporates Bankruptcy Rule 7054, a money judgment can be entered against the debtor in favor of the UST.

The court is not persuaded by the UST's argument. The motion for dismissal was brought by the debtor, not the UST. In order for the UST to invoke the provisions of Rule 9014, a motion would need to be filed and a hearing scheduled. In addition, Bankruptcy Rule 9013 indicates that an order flows from a motion—not a judgment. More importantly, a motion would not be the proper means to bring this matter before the court.

Clearly the appropriate procedure for requesting a money judgment from the court is by adversary proceeding. Bankruptcy Rule 7001 provides a list of actions that must be brought under part VII of the Bankruptcy Rules. Rule 7001(1) specifically requires that an adversary proceeding be brought "to recover money or property, except a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017 or Rule 6002."

The present request of the UST constitutes an action to recover money of the debtor and the UST must, therefore, comply with the requirements related to filing an adversary proceeding. This court has previously considered the distinction between adversary proceedings and contested matters. *See In re Riding*, 44 B.R. 846 (Bankr.D.Utah 1984). In normal circumstances, adversary proceedings involve more complex issues where contested matters involve relatively uncomplicated disputes that can be adjudicated summarily. *Id.* at 858. Despite the fact that adversary proceedings are generally thought to be more complicated than contested matters, "[t]he Bankruptcy Court's powers, although very broad, must be exercised in accordance with procedural requirements of the Code and Rules." *Id.* at 859. (citing *In re Chanticleer Associates, Ltd.*, 592 F.2d 70, 74 (2d Cir.1979). *Cf. In re UNR Industries, Inc.*, 23 B.R. 144 (Bankr.N.D. Ill.1982) (order modifying automatic stay vacated because the product of a creditor's

motion, not an adversary complaint as required by former bankruptcy rules); *Matter of Allen,* 17 B.R. 119 (Bankr.N.D.Ohio 1981) (motion to lift automatic stay in chapter 13 case dismissed because relief sought required commencement of adversary proceeding under former rules)).

In addition to the ruling in *Riding* and the cases cited by it requiring parties to strictly follow the procedural requirements of the Bankruptcy Rules, several other courts have required parties to file adversary proceedings when the Rules so require. For example, the Ninth Circuit Court of Appeals in *In re Golden Plan of California, Inc.,* 829 F.2d 705, 711 (9th Cir.1986) overturned the district court's determination that certain advances to investors constituted fraudulent conveyances due to the procedural failure of the bankruptcy trustee to bring adversary proceedings pursuant to Bankruptcy Rule 7001. The court cited to another Ninth Circuit opinion, *In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1337 (9th Cir. 1985), where the court invalidated a trustee's avoidance of the assignment of certain notes through a chapter 11 plan because an adversary proceeding was required by former Rule 701.[6]

Even though the issue raised before the court in the present case could probably be resolved summarily, the court and the parties are required to follow the Bankruptcy Rules and, therefore, the UST's request for a money judgment must be brought in the form of an adversary proceeding. Otherwise, any creditor with an unpaid chapter 11 administrative expense could move for a money judgment that is collectable post dismissal.[7] This court would be inundated with such motions in a race to the courthouse to obtain judgments prior to the court dismissing a case. Such actions are more properly brought in state court where they likewise would require the procedural due process of a law suit. The standard will not be any less in this court.

The UST cites *In re Shoreline Concrete Co., Inc.,* 831 F.2d 903 (9th Cir.1987) in support of its request that the court grant a money judgment for the unpaid fees. *Shoreline* interpreted the application of the statutory fees imposed under section 40(c)(2)(a) of the Bankruptcy Act of 1898, in a case in which a chapter XI petition was filed and subsequently converted to a chapter VII. The chapter VII trustee continued to operate the debtor's business and eventually all the debts originally listed had been satisfied by the trustee through the profits of the corporation, or paid by its principal stockholder. The bankrupt then moved for dismissal of the case. The dispute arose over outstanding fees owing to the court. The fee schedule under the Act provided that fees calculated under a chapter XI were lower than those calculated under a chapter VII. Thus, the bankrupt was attempting to pay the fees based on the chapter XI calculations.

---

6. Numerous other examples can be found where the courts have required strict compliance with the Bankruptcy Rules requiring the filing of an adversary proceeding when a dispute properly falls within the Rule 7001 guidelines. *See, e.g., In re Lawler,* 75 B.R. 979 (Bankr.N.D.Tex.1987) (requiring an adversary proceeding to be brought in order to recover money judgment on a claim for legal malpractice while objecting to law firm's claim); *Hancock Bank v. Jefferson,* 73 B.R. 183 (S.D.Miss. 1986) (finding that an adversary proceeding was the proper avenue to assert a claim against a bank in alleging fraud in procuring its deed of trust); *In re Sun Belt Elec. Constructors, Inc.,* 56 B.R. 686 (Bankr.N.D.Ga.1986) (ruling that a motion to enforce a contract that included a request for injunctive or equitable relief must be brought by adversary proceeding); and *In re La Boucherie Bernard, Inc.,* 55 B.R. 23 (Bankr.D.C. 1985) (recognizing that the exceptions under Rule 7001(1) are to be strictly construed, thereby requiring the filing of an adversary proceeding to recover money or property).

7. Fees and charges assessed against an estate under Chapter 123 of Title 28 are specifically made a first administrative expense allowed under 11 U.S.C. § 507(a). As stated in 11 U.S.C. § 503(a), any entity may file a request for payment of an administrative expense. Those fees would then be pro rated with other competing section 503(b) administrative expenses. *In re Granada, Inc.,* 88 B.R. 369, 374 (Bankr.D. Utah 1988). To allow a judgment upon a motion in favor of the UST for these specific expenses would be prejudicial to other creditors in the same priority who have not moved for a judgment. It could also result in the UST's judgment subordinating a super priority claim.

Based on the clear meaning of the statute, the circuit court reversed the district court and required the bankrupt to pay the higher chapter VII fees. Apparently, the significance of the *Shoreline* case to the UST is the court's award of a "judgment" for the fees in favor of the United States. The use of the word "judgment" should not be considered significant in this case. Judgment, as defined by Bankruptcy Rule 7054 "includes a decree or any order from which an appeal lies." There is no indication in *Shoreline* that the court intended the judgment to be one enforceable against the debtor in other courts. In fact, the bankruptcy referee conditioned dismissal of the case on the payment of the fees. The only party to be harmed by the continuation of the court's jurisdiction over the case was the bankrupt itself. All of the creditors had been paid. This is not the circumstance in the present case. In fact, the opposite is true. Substantial harm would come to creditors prevented from collecting on their debts by the automatic stay while waiting for the debtor to pay the quarterly fees so the case could be dismissed.

## CALCULATION OF FEES UNDER 28 U.S.C. § 1930(a)(6)

As previously indicated, the statute leaves much to be desired by way of instruction *regarding how to calculate or collect the fees.* No definition of "disbursement" is given, nor any clarification as to *what happens if a quarter is split by filing,* confirmation, conversion or dismissal of a case. The amount of UST fees may be of substantial significance to a struggling debtor attempting to rehabilitate. Thus, this court has not dealt lightly with the issue. Because of the effect on the possibility of rehabilitation for many debtors, the UST's request for a "decretal order" and the uncertainty over the actual amount

due in this cases, it is incumbent upon the court and appropriate under 11 U.S.C. § 105(a) to disclose to the UST certain aspects of the law that the court views differently from the UST's interpretation of the statute.

■ The UST's policy requires debtors to pay a minimum fee per quarter of $150.00, even if no disbursements were made during that period. It is this court's interpretation that debtors who have not made any disbursements during a quarter should not be required to pay the quarterly fee. In 28 U.S.C. § 1930(a)(6), there is no reference to the assessment of quarterly fees in cases where the debtor has made no disbursements, merely that a fee should be charged if disbursements are less than $15,000.00. This creates an ambiguity that the court will likely be asked to resolve in the future.[8]

Not only has the significance of a debtor not being able to make payments to the UST presented itself to the court in this case, but it has also been impliedly significant on occasions when considering the feasibility of a debtor's proposed plan of reorganization under 11 U.S.C. § 1129(a)(11). Eventually, this court will be asked to resolve the ambiguity left in the statute by a debtor with an otherwise confirmable plan, who has made no disbursements and has no liquid assets to pay the UST's fees upon the effective date. In order to resolve this ambiguity, it is appropriate to look beyond the statute for guidance.

■ This court recognizes that statutory interpretation requires deference to the supremacy of Congress and that this court must follow the plain meaning of the Bankruptcy Code and related statutes. *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985) (citations omitted).[9] However, when a statute is am-

---

**8.** This court also anticipates future difficulty with the term "disbursement". It may, by analogy, be equated with disbursement in calculating chapter 7 trustee's fees pursuant to 11 U.S.C. § 326, and relevant case law applied. The quirk is that the court may modify chapter 7 trustees fees if it appears equitable. For instance, if a surrender or transfer of property is claimed to be "monies disbursed", or if award-

ing a fee is disproportionate to the work done by the trustee or generally inequitable, the court might not award the maximum statutory fee. No such provision exists in this instance to modify the UST's fee.

**9.** The Supreme Court in *United States v. Locke,* provides a summary of several significant statements from the Court in the application of a

biguous, like 28 U.S.C. § 1930(a)(6), it is appropriate to go beyond it and review the legislative history. In general, very few statements were made with respect to the UST's quarterly fees in the legislative history. The commentary on the proposed UST program primarily focused upon the success of the UST pilot program and the need for continued monitoring of the bankruptcy trustees, the bankruptcy courts and their procedures. *See* COMMITTEE ON THE JUDICIARY UNITED STATES SENATE, THE UNITED STATES TRUSTEE SYSTEM, Serial No. J–99–92, 99th Cong., 2d Sess. (1986); HOUSE SUBCOMMITTEE ON MONOPOLIES AND COMMERCIAL LAW, THE UNITED STATES TRUSTEES ACT OF 1985, Serial No. 93, 99th Cong., 1st and 2d Sess. (1985 and 1986); and H.REP. N. 99–764, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 5227, 5234–35.

Found in the final report is a significant statement that relates to the present problem. The House Report indicates that:

Further, chapter 11 debtors would pay an additional fee, on a quarterly basis, based on their disbursements during the quarter. *Only debtors who have made disbursements would pay this additional fee.*

H.REP. NO. 99–764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 5227, 5234. (emphasis added). Based on this clear indication of Congress' intent not to require debtors who have made no disbursements in a particular quarter to pay the minimum quarterly fee, this court will not require payments to be made under these circumstances in the future.

■ Debtors without liquid assets should not be precluded from filing a chapter 11 petition because they are unable to pay the quarterly assessment. In the present case, the debtor has ceased doing business, has made no disbursements, but nonetheless is expected to pay the quarterly fee. As the legislative history indicates, "[t]he self-funding mechanism is designed to fund the U.S. Trustee program—not make money for the government." [10] A debtor with no cash flow should not, therefore, be required to liquidate assets merely to pay these fees if no other disbursements are being made. Under some circumstances, the payment of any fee would be impossible for some chapter 11 debtors for whom chapter 11 relief should still be afforded.

■ The second area of ambiguity present in this case is the method of the actual calculation of the quarterly fee. Apparently the UST has previously assessed quarterly fees for an entire quarter no matter when a case is commenced, convert-

---

court's power to consider legislative history in interpreting a statute:

But the fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 [98 S.Ct. 2010, 2015, 56 L.Ed.2d 581] (1978). Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result. See *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 98 [101 S.Ct. 1571, 1584, 67 L.Ed.2d 750] (1981). On the contrary, deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally require us to assume that "the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9

[82 S.Ct. 585, 591, 7 L.Ed.2d 492] (1962). "Going behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 75 [102 S.Ct. 1534, 1540, 71 L.Ed.2d 748] (1982) (quoting *Piper v. Chris–Craft Industries, Inc.,* 430 U.S. 1, 26 [97 S.Ct. 926, 941, 51 L.Ed.2d 124] (1977)).

*United States v. Locke,* at 95–96, 105 S.Ct. at 1793. In *Locke,* the court continues to warn the lower courts to proceed with caution. In the present case, this court is filling in a gap in the statute that creates an ambiguity and it is, therefore, appropriate to look to the legislative history to interpret the statute.

10. H.REP. NO. 99–764, 99th Cong., 2d Sess. 22, *reprinted* in 1986 U.S.CODE CONG. & ADMIN. NEWS 5227, 5234. This court recognizes the need for fees paid under 28 U.S.C. § 1930 to operate the bankruptcy courts and the consistent rulings from other courts upholding the requirement to pay such fees. *See, supra* n. 4.

ed or dismissed, or when a plan is confirmed. In reading 28 U.S.C. § 1930(a)(6) this court notes that specific reference is made to the calculation of the quarterly fee assessments on a fractional basis for those quarters in which an unconfirmed chapter 11 petition is pending for only a portion of a quarter. The Code provides that:

a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (*including any fraction thereof*) until a plan is confirmed of the case is converted or dismissed, whichever occurs first.

28 U.S.C. § 1930(a)(6) (emphasis added).

It is not appropriate to assess a debtor a charge for the entire quarter when the debtor might file its petition on the last day of a quarter, or have its plan confirmed, case dismissed or converted on the first day of a quarter. In the present case, filed in mid-December, the debtor's disbursements were only $478.75 for that month. If there is no fractionalization, the debtor would be charged for a full quarter, or $150.00. That result seems unfairly disproportionate to this court and an unwarranted depletion of the assets of this debtor.

■ Should the UST choose to commence an adversary proceeding against the debtor to collect on the past-due quarterly fees, the court would only consider awarding a judgment for the time when the unconfirmed case was actually pending. This should be calculated from the date when the case was filed until February 17, 1988, the date when the debtor's request to dismiss this matter was heard.

■ In the future, other cutoff dates will be of importance to the UST and all parties in making these calculations. When a case is confirmed, the fee cutoff date should be when the order of confirmation is entered. The cutoff date when a case is converted or dismissed should likewise be the date when the order is entered.[11] The court should maintain the flexibility to specifically set a date in those unique circumstances, such as this, where calculation becomes unduly complex or other matters such as when the cutoff date of the debtor's books and records would dictate.

## CONCLUSION

The assessment of the quarterly fees against chapter 11 debtors is an important element of the UST program and its self funding nature. The UST system can provide substantial assistance to the courts through its monitoring of chapter 11 cases as well as its other duties. When Congress chose to have the UST system applied on a nationwide basis, an important consideration was funding for the system and the requirement that chapter 11 debtors pay a quarterly fee. This court is not called upon to determine whether the scheme's sliding fee schedule based on disbursements unfairly discriminates between debtors.[12] However, the assessment of those fees and their collection must be accomplished in an equitable manner. Undue hardship should not be placed on chapter 11 debtors seeking dismissal who cannot pay the quarterly fees, nor upon their creditors, in order to fund the UST program. The court therefore holds that cause exists pursuant to 11

**11.** Usually the effective date of a confirmed chapter 11 plan is a specified point in time after the order of confirmation becomes nonappealable. This gap period would allow the UST and debtor time to cut off the debtor's books and calculate the payment prior to it being due on the effective date of the plan. Care should be taken not to create practical problems in calculating a payment due on the same date as the cutoff date. As the cutoff date relates to converted cases, the case ceases to be a chapter 11 when the order of conversion is entered. The debtor can then calculate the fee between that date and the subsequent 30 day period for filing of additional information pursuant to

Bankruptcy Rule 1019(6). If the case is dismissed, the logical date would likewise be the date of the entry of the order of dismissal unless, as in this instance, such date would be unfair because of the delay in entry of the order.

**12.** Two debtors with identical dollar amount of debt and assets would be assessed differently based upon the amount disbursed each quarter. A real estate holding company with no disbursements would pay less than a retailer with the same size estate, but with substantial disbursements.

U.S.C. § 1112(b), including inability to effectuate a plan, to dismiss this case and further concludes that the UST's motion for a judgment for unpaid fees is procedurally improper and is therefore denied. The court's order that is attached hereto, allows the UST 15 days to determine if it wishes to file an adversary proceeding in this case in order to attempt to collect its quarterly fees.